UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                                 :

MICHAEL M.J. MATHIE, IV,         :

                               :

          Plaintiff,       :

                               :          06 Civ. 3184 (GEL)

   -against-              :

                               :      **OPINION AND ORDER**

ROBERT DENNISON, CHAIRMAN,  :
NEW YORK STATE DIVISION OF PAROLE,  :
COMMISSIONERS WALTER WILLIAM  :
SMITH, JR., DEBRA J. LOOMIS, MARIETTA  :
S. GAILOR, G. KEVIN LUDLOW, VANESSA  :
A. CLARKE-MCCARTHY, GEORGE C.  :
JOHNSON, THOMAS P. GRANT, LIVIO  :
LAZZARI, R. GUY VIZZIE, JR., FORMER  :
COMMISSIONER VERNON C. MANLEY,  :
AND ASSISTANT COUNSEL THEODORE H.  :
CLEMENTS,  :

                               :

          Defendants.    :

                               :
-------------------------------------------------------------x

Michael M.J. Mathie, IV, pro se.

Eliot Spitzer, Attorney General of the State of
New York (Maria Barous Hartofilis, Assistant
Attorney General, Of Counsel), for defendants.

GERARD E. LYNCH, District Judge:

      Plaintiff Michael M.J. Mathie IV, an inmate in the custody of the New York State

Department of Correctional Services, brings this action, pursuant to 42 U.S.C. § 1983, alleging

various violations of his constitutional rights stemming from his denial of parole in June 2003

and June 2005, and seeking an injunction to prevent such violations in the future.  Defendants

Robert Dennison, Chairman of the New York State Division of Parole ("Division," or "Parole

Board"), various Division commissioners, and Division Assistant Counsel Theodore H.

Clements, move to dismiss the complaint, arguing that defendant has failed to state a claim for any constitutional violations.  Defendants' motion will be granted.

## BACKGROUND

Only the facts relevant to the current motion are recited here.

Mathie is currently serving a sentence of eight to twenty-four years' imprisonment for his 1989 conviction for manslaughter in the first degree, a violent felony offense to which Mathie pled guilty.  In addition to the manslaughter charge, Mathie also pled guilty to conspiracy in the third degree and received a consecutive sentence of two to six years of incarceration.  (Defs. Ex. A.)

Mathie first became eligible for parole on August 21, 1999.  (Defs. Ex. B.)  He was denied parole at that time and held for an additional 24 months.  (Id.)  He re-appeared before the Parole Board in July 2001, June 2003, and June 2005; each time plaintiff was denied release and held for an additional 24 months.  (Am. Compl. ¶¶ 54-55, 61-62; Defs. Exs. C, D.)  Mathie appealed the 2003 and 2005 denials of parole to the Division's Appeal Unit.  (Am. Compl. ¶¶ 58, 65.)  The Appeal Unit upheld the denials.  (Am. Compl. ¶¶ 60, 67; Defs. Reply Ex. A; Pl. Ex. CcC, at 1268-72.)

In November 2005, Mathie submitted a Freedom of Information Law ("FOIL") request, seeking certain documents he had submitted in support of his parole release in 2003 and 2005.  (Pl. Ex. Zz, at 683-84.)  Theodore H. Clements, Division Assistant Counsel, responded that no such documents existed in the Board's records.  (Id.)  In December 2005, Mathie wrote to the Appeals Unit seeking reconsideration of his 2005 appeal, arguing that the Parole Board could not have considered all of the "relevant documentary evidence" in rendering its decision because it

did not possess the documents that he had sought in his FOIL request.  (Id.)  Reconsideration of his appeal was denied.  (Id. 686.)

Mathie has attacked his parole denials in both federal and state court.  On September 12, 2005, Mathie commenced this action in federal court, challenging his 2003 and 2005 parole denials and requesting various forms of relief, including compensatory and punitive damages. On April 25, 2006, Chief Judge Mukasey ordered plaintiff to submit an amended complaint detailing the specific nature of his claims.  (Defs. Ex. G.)  Plaintiff submitted an amended complaint on June 17, 2006.  The case was reassigned to this Court shortly thereafter.

Meanwhile, on February 27, 2006, Mathie filed an Article 78 petition in state court, raising substantially the same issues as this action with respect to his 2005 parole denial.  (Defs. Ex. F.)  On August 3, 2006, the state court dismissed Mathie's petition due to improper service. (Defs. Exs. E, F.)  On September 25, 2006, Mathie's motion to reargue his Article 78 petition was denied.  (Id.)

On October 31, 2006, defendants moved to dismiss plaintiff's complaint in this action; plaintiff responded on January 18, 2007.  The motion was fully briefed as of April 23, 2007.

## DISCUSSION

I.      Motion to Dismiss Standard

The notice pleading standard of Federal Rule of Civil Procedure 8(a)(2) requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief."  Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Erickson v. Pardus, ___ U.S. ___, 127 S. Ct. 2197, 2200 (2007) (citations and internal quotation marks omitted).  Further, where a

plaintiff is proceeding pro se, the Court must read the pleadings liberally and view them as raising the strongest arguments that are suggested therein.  McEachin v. McGunnis, 357 F.3d 197, 200 (2d Cir. 2004).

A complaint may be dismissed pursuant to Rule 12(b)(6) where the complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic v. Twombly, ___ U.S. ___, 127 S. Ct. 1955, 1974 (2007).  As the Second Circuit has recently stated, Twombly requires that a plaintiff satisfy "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007).  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Twombly, 127 S. Ct. at 1964-65 (internal quotation marks omitted).  In order to state a claim, the factual allegations contained in the complaint "must be enough to raise a right to relief above the speculative level." Id. at 1965.  Although "[a] pro se complaint . . . must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson, 127 S. Ct. at 2200, where a plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." Twombly, 127 S.Ct at 1974.

II.    Constitutional Claims

Plaintiff brings this action pursuant to 42 U.S.C. § 1983.  To state a claim under § 1983, a plaintiff must show that: (1) the defendant officials acted under "color of state law"; and (2) their conduct or actions deprived plaintiff of a right, privilege, or immunity guaranteed by the Constitution or laws of the United States.  LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 426 (2d

4

Cir. 1995).  There is no dispute that the defendants, state officials responsible for implementing New York's parole statutes, acted under "color of state law."  42 U.S.C. § 1983.

Plaintiff asserts three distinct constitutional violations.  First, plaintiff claims that the 2003 and 2005 parole denials violated his rights to due process by denying him parole in an arbitrary and capricious manner.  Second, plaintiff claims that the parole denials violated his right to equal protection, insofar as New York State has adopted a policy of denying parole to all violent offenders, or, alternatively, insofar as the State has singled him out for discriminatory treatment.  Third, plaintiff claims that the parole denials constitute ex post facto extensions of his sentence.  In addition, plaintiff claims that defendants conspired to deny him the aforementioned rights.  Defendants argue that plaintiff has not set forth any viable constitutional claims, either because those claims are barred, or because plaintiff has failed to state a claim as to which relief may be granted.

A.     The Heck Bar

As an initial matter, defendants argue that plaintiff's suit is barred by Heck v. Humphrey, 512 U.S. 477 (1994), because plaintiff has not established that "his incarceration has been invalidated by state administrative or judicial proceedings or via federal habeas corpus proceedings."  (Defs. Mem. 12.)  Plaintiff argues that Heck does not preclude his suit because he is "challenging the procedures used in determining his parole eligibility, and not the validity of his confinement."  (Pl. Mem. 44.)  Although Heck bars plaintiff's suit insofar as he is seeking damages, to the extent plaintiff is "challenging the procedures used" by the Parole Board, his suit is not Heck-barred.  (Id.)

"Although § 1983 provides a broad remedy for the violation of an individual's constitutional rights," <u>Odom v. Pataki</u>, No. 00 Civ. 3727, 2001 WL 262742, at *3 (S.D.N.Y. Mar. 15, 2001), the Supreme Court held in <u>Heck</u> that a prisoner may not assert a damages claim under § 1983 where such a claim "attacks the fact or length of the [prisoner's] confinement[,] without first showing that the conviction or sentence has been reversed or otherwise invalidated." <u>Id</u>., citing <u>Heck</u>, 512 U.S. at 486-87.  Absent such a showing, a prisoner may only seek relief in the federal courts through a petition for habeas corpus.  <u>See</u> <u>Jenkins v. Haubert</u>, 179 F.3d 19, 23 (2d Cir. 1999).  The <u>Heck</u> bar "applies to § 1983 damage actions challenging the fact or duration of parole release [because] . . . the plaintiff is in effect attacking his confinement." <u>Hill v. Goord</u>, 63 F. Supp. 2d 254, 261 (E.D.N.Y. 1999), quoting <u>Friedland v. Fauver</u>, 6 F. Supp. 2d 292, 309 (D.N.J. 1998).  Furthermore, <u>Heck</u> bars an inmate's § 1983 action "no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit . . . *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration."  <u>Wilkinson v. Dotson</u>, 544 U.S. 74, 81-82 (2005) (emphasis in original).  Thus, an inmate may not seek a declaratory judgment overturning a particular parole determination in a § 1983 action.  <u>See</u>, <u>e.g.</u>, <u>Butterfield v. Bail</u>, 120 F.3d 1023, 1025 (9th Cir. 1997) (finding that any equitable or monetary relief "based upon the harm to [an inmate] in having his parole denied" is barred by <u>Heck</u>).

In his amended complaint, plaintiff seeks several forms of relief, including "an Order declaring the defendants herein have acting in violation of" the federal and New York State constitutions and New York State law, compensatory and punitive damages, and "an injunction to prevent the defendants' actions from occurring at any time, until the end of the world."  (Am.

Compl. ¶¶ 75, 77-79.)  However, plaintiff has withdrawn his claim for damages against all defendants except Clements.  (Pl. Mem. 2.)  Indeed, even if plaintiff had not withdrawn his damages claim, that claim is clearly barred by Heck; if plaintiff were to receive damages in this action, such a resolution would call into question the validity of his imprisonment.  Heck, at 486-87; see Butterfield, 120 F.3d at 1025 ("Any money damages that would be assessed against defendants . . . will inevitably be measured by the denial of parole . . . .").

To the extent that plaintiff continues to seek damages against defendant Clements, plaintiff's request is similarly barred by Heck.  Plaintiff claims that Clements violated his constitutional rights by denying reconsideration of plaintiff's parole determination appeal. Plaintiff's claims against Clements are neither conceptually nor practically distinguishable from his claims against the remaining defendants.[1]  His claim for damages against Clements implicates the "fact or duration of [his] confinement," Hill, 63 F. Supp. 2d at 261; unless and until plaintiff's conviction has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus," Heck, 512 U.S. at 487, he cannot receive damages for any injury allegedly caused by Clements, or any other defendants in this action in denying him parole.

In addition, to the extent that plaintiff seeks an "[o]rder" invalidating his parole determinations (see Am. Compl. ¶ 75), or requiring the Parole Board to take specific action with respect to any particular parole determinations, such a request is also barred by Heck.  Even if

---

[1] In fact, plaintiff specifically acknowledges that his claims against Clements are conceptually indistinct from his claims against the other defendants.  (Pl. Mem. 7.)

the Court were "empowered" to grant such relief, an order reversing a parole determination would necessarily "be based upon the harm to [plaintiff] in having his parole denied," Butterfield, 120 F.3d at 1025, and therefore would be a challenge to the "fact or duration" of his confinement.  Hill, 63 F. Supp. 2d at 261.  See Bodie v. Morgenthau, 342 F. Supp. 2d 193, 201 (S.D.N.Y. 2004) (denying plaintiff's request for injunctive relief where plaintiff sought "to compel specific action pertaining to the content of [his] parole records").  Thus, to the extent that plaintiff's complaint could be interpreted as seeking an order reversing his parole determination or "compel[ling]" the Board to take certain action with respect to plaintiff's parole, id., such relief is also barred by Heck.[2]

However, plaintiff does not only seek damages or a declaratory judgment in this action; instead, plaintiff also seeks "an injunction to prevent the defendants' actions from occurring at any time, until the end of the world."  (Am. Compl. ¶ 79.)  Specifically, plaintiff seeks to prevent the Parole Board from applying allegedly unconstitutional procedures to future parole determinations.  (Pl. Mem. 43-45.)  Defendants argue that such relief is similarly barred by Heck.

Defendants misinterpret Heck.  Heck only precludes an inmate's § 1983 suit when resolution of the suit would "*necessarily demonstrate* the invalidity of his conviction or sentence."  McKithen v. Brown, 481 F.3d 89, 102 (2d Cir. 2007) (emphasis in original).  Conversely, if "a prisoner's success might be merely helpful or *potentially* demonstrative of

---

[2] Plaintiff also seeks a "formal recommendation for a criminal investigation" of the Parole Board and state legislators.  (Am. Compl. ¶ 76.)  However, such relief is beyond the authority of the Court to grant.  Moreover, the Court would not recommend such an investigation even if it could, as plaintiff has not alleged any violations of the criminal law and none of his allegations suggest potential criminal violations.

illegal confinement," then <u>Heck</u> does not apply, <u>id.</u> at 103 (emphasis in original), and the suit

"should be allowed to proceed." <u>Heck</u>, 512 U.S. at 487.  Moreover, the fact that plaintiff

brought this suit with the motivation of securing faster release is irrelevant to the <u>Heck</u> analysis.

<u>McKithen</u>, 481 F.3d at 102.  Instead, "because [Mathie's] claim would [not] necessarily spell

speedier release," his claim for future injunctive relief is not barred.  <u>Dotson</u>, 544 U.S. at 82.  <u>See</u>

<u>id</u>. (finding that requests for "*future* relief" are so "distant" from the "core" of plaintiff's

confinement that they are not barred by <u>Heck</u>) (emphasis in original).

       In this case, even if success on the merits of plaintiff's claims "might well make it more

likely that [Mathie], in a subsequent proceeding, may eventually be able to make a showing that

his conviction was unlawful," <u>McKithen</u>, 481 F.3d at 103, success on his claims would not

necessarily result in plaintiff's immediate release from prison, invalidate his confinement, or

direct any particular outcome in his parole proceedings.  Instead, the relief plaintiff seeks "will

render invalid" only certain of the "state procedures to deny . . . parole suitability," and not the

Board's particular parole determinations pertaining to plaintiff.  <u>Dotson</u>, 544 U.S. at 82.

"Success for [Mathie] [would] not mean immediate release from confinement or a shorter stay in

prison," but rather would merely require that certain of the procedures employed by the Board in

making parole determinations be altered.  <u>Id</u>.  Thus, "a favorable judgment will not necessarily

imply the invalidity of [his] conviction or sentence," <u>id</u>., and "[p]laintiff may maintain his claim

under § 1983 . . . to the extent that he is challenging the procedural grounds upon which the

Parole Board relied to deny him parole."  <u>Bottom v. Pataki</u>, No. 9:03 Civ. 835, 2006 WL

2265408, at *5 (N.D.N.Y. Aug. 7, 2006).

9

B.      Due Process

Having determined that plaintiff's claim for future injunctive relief is not Heck-barred,

the Court must now turn to the merits of plaintiff's constitutional claims.  First, plaintiff argues

that defendants deprived him of due process by failing to "weigh[] all the statutory criteria" as

required by New York State law in making its 2003 and 2005 parole determinations.  (Pl. Mem.

7.)  Defendants move to dismiss plaintiff's due process claim, arguing that plaintiff has no

constitutional right to parole, and that, even if defendants have failed to comply with New York

State law, such conduct does not create a constitutional violation.  The Court agrees.

It is axiomatic that a prisoner does not have a constitutional right to parole.  Greenholtz

v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979); Barna v. Travis, 239 F.3d 169,

171 (2d Cir. 2001) (the New York parole system does not "create[] in any prisoner a legitimate

expectancy of release").  A convicted person has no constitutional right to be conditionally

released before the expiration of a valid sentence, and decisions by the state parole board are

discretionary.  Greenholtz, 442 U.S. at 7.  Under state law, however, the Parole Board's

discretion is not unlimited.  In making parole determinations, the Board must consider various

factors, including the inmate's institutional record and his or her release plans.  See N.Y. Exec.

Law 259-i(2)(c)(A); N.Y. Exec. Law 259-i(1)(a); see also Manley v. Thomas, 255 F. Supp. 2d

263, 267 (S.D.N.Y. 2003).[3]  "[I]f done in accordance with law," the parole determination is

_____

[3] New York law directs the Parole Board to consider: (i) the institutional record including
program goals and accomplishments, academic achievements, vocational education, training or
work assignments, therapy and interpersonal relationships with staff and inmates; (ii)
performance, if any, as a participant in a temporary release program; (iii) release plans including
community resources, employment, education and training and support services available to the
inmate; (iv) any deportation order issued by the federal government against the inmate while in
the custody of the department of correctional services and any recommendation regarding

generally not subject to judicial review.  N.Y. Exec. Law § 259-i(5).  However, if judicial review

is appropriate, such review is generally a matter for the state courts.  See, e.g., N.Y. C.P.L.R. §

7801.  An inmate's "federally-protected liberty interest in parole release is limited to not being

denied parole for arbitrary or impermissible reasons."  Brown v. Thomas, No. 02 Civ. 9257,

2003 WL 941940, at *1 (S.D.N.Y. Mar. 10, 2003), citing Meachum v. Fano, 427 U.S. 215, 226

(1976); see Bottom, 2006 WL 2265408, at *5 ("[A]n inmate may only bring a due process claim

if the denial of parole is either arbitrary or capricious.").

Plaintiff cites numerous statements of former Governor George Pataki and senior

members of his administration advocating for the elimination of parole for violent felons.  (Am.

Compl. ¶¶ 46, 72-73.)  He alleges that the Pataki administration, unable to secure legislation to

this effect, conveyed this "unwritten" position to defendants (id. ¶ 24), who proceeded to carry it

out by reflexively denying parole to violent felons (including plaintiff) in recent years, and

failing to consider inmates' institutional records or other factors required by New York State

statute.  (Id. ¶ 25; Pl. Mem. 32 ("[T]he seriousness of plaintiff's crime is deemed by the Board to

be sufficient basis for precluding release.").)  Plaintiff includes much information regarding the

alleged Pataki policy, as well as statistics allegedly demonstrating a decrease in granting parole

as a result of the policy.  (Am. Compl. ¶¶ 44-49; see id. ¶ 45 (characterizing the Board as a "re-

sentencing commission"); Pl. Mem. 8-17.)  Plaintiff argues that such a policy violates his right to

due process by "render[ing] the plaintiff completely unable to be meaningfully considered for

_____

deportation made by the commissioner of the department of correctional services pursuant to
section one hundred forty-seven of the correction law; and (v) any statement made to the board
by the crime victim or the victim's representative, where the crime victim is deceased or is
mentally or physically incapacitated.  See N.Y. Exec. Law § 259-i(c); 9 N.Y.C.R.R. § 8001.3.

release to parole." (Am. Compl. ¶ 74.)

Even assuming the existence of an unwritten, blanket policy to deny parole to all violent felons in New York, plaintiff has not stated a due process claim. First, plaintiff does not argue that the State's alleged policy requires the Board to look outside the statutory factors in making its parole determination; instead, he merely argues that the Board has overvalued the severity of the crime, at the expense of other statutory considerations. However, Mathie's due process rights extend only to a refusal by the Parole Board to deny release arbitrarily or capriciously, for example, based on "inappropriate consideration of a protected classification or an irrational distinction." Morel v. Thomas, No. 02 Civ. 9622, 2003 WL 21488017, at *4 (S.D.N.Y. June 26, 2003). A policy that requires the Board to look first and foremost at the severity of the crime when making its parole determination is neither arbitrary nor capricious; instead, the Board is entitled to "give whatever weight it deems appropriate to the statutory factors" listed in N.Y. Exec. Law § 259-i(c). Romer v. Travis, No. 03 Civ. 1670, 2003 WL 21744079, at *6 (S.D.N.Y. July 29, 2003). Indeed, even if such a policy results in the almost total denial of parole to all violent offenders, the Board is "entitled to determine that the nature of the crime outweighed the positive aspects of [plaintiff's] record." Morel, 2003 WL 21488017, at *5. The Due Process Clause is not violated by the Board's balancing of the statutory criteria, which is the Board's primary responsibility and is not properly second-guessed by this Court. See Barna, 239 F.3d at 171 (finding that the statutory guidelines "are intended only as a guide, and . . . not [as] a substitute for the careful consideration of the many circumstances of each individual case"), quoting N.Y.C.R.R. § 8001.3(a).

Second, even if New York State implemented an official policy denying parole to all violent offenders, such a policy would not constitute a due process violation. There is nothing "inappropriate" about a blanket policy denying parole to all members of a particular class, as long as that policy is rational and the classification is not based on a suspect trait such as race, Morel, 2003 WL 21488017, at *4; indeed, such a policy could not possibly be a due process violation, as the federal system has abolished parole altogether for all inmates, including both violent and non-violent felons. See United States v. Reynard, 473 F.3d 1008, 1014 n.4 (9th Cir. 2007). If the federal government can abolish parole altogether without violating the Constitution, then New York State surely acts within constitutional confines if it decides to restrict parole to only non-violent felons, whom the State could rationally find pose a greater risk to public safety and therefore are not proper candidates for early release. See Salahuddin v. Unger, No. 04 Civ. 2180, 2005 WL 2122594, at *7 (E.D.N.Y. Sept. 2, 2005) ("[T]he state's rational basis for a distinction in parole determinations between violent and nonviolent offenders is obvious: preventing the early release of potentially violent inmates.").[4]

Nor would such a policy violate the Due Process Clause even if the policy were adopted or implemented in violation of state law. Essentially, plaintiff conflates a potential state law claim with a non-existent constitutional claim. Plaintiff may be correct that a blanket policy

---

[4] At least one court in this district has found that an unofficial policy of denying parole to all violent felons may violate due process. See Graziano v. Pataki, No. 06 Civ. 0480, 2006 WL 2023082, at *8 (S.D.N.Y. July 17, 2006) (Brieant, J.) (characterizing an unofficial policy of denying parole to all violent offenders as an "end run around the legislature" which the Governor is not "permitted" to do). However, the Court finds the reasoning of Graziano unpersuasive for the reasons stated supra, as have other courts in this Circuit. See Cartagena v. Connelly, No. 06 Civ. 2047, 2006 WL 2627567, at *9 (S.D.N.Y. Sept. 14, 2006) (finding that "the purported policy would not by itself reflect an arbitrary or capricious failure to consider statutory factors").

13

denying parole to all violent felons violates existing state law; however, constitutional and state

law claims are not inherently coextensive.  While the Parole Board is afforded wide latitude in

making its parole determinations under the Due Process Clause, state law might further limit the

Board's discretion.  The Court expresses no opinion on the merits of plaintiff's potential state

law claim, except to recognize that there is a split among New York courts on the issue.[5]

However, to the extent that plaintiff has a potential state law claim against defendants, § 1983 is

not the proper vehicle, and this Court is not the proper venue, for vindicating such a claim.

Adjudicating the merits of plaintiff's claim would require a determination of the contours of a

state law, and "resolution of the question of the proper meaning and significance of [the New

York parole law] is best left to the New York courts."  Anthony, 2006 WL 3859215, at *10.[6]

Moreover, New York has implemented specific procedures for hearing claims against state

authorities such as the Parole Board.  N.Y. C.P.L.R. § 7801; see Calhoun v. N.Y. State Div. of

---

[5] Compare Salahuddin, 2005 WL 2122594, at *6 ("[T]he [New York] law does not forbid the Board from deciding that the seriousness of an offense and a prisoner's institutional record outweigh [other criteria]."), and Anthony v. N.Y. State Div. of Parole, No. 06 Civ. 180, 2006 WL 3859215, at * (S.D.N.Y. Jan. 4, 2006) (finding that New York law "allows the denial of parole based solely on the severity of the offense so long as there is 'a showing of some aggravating circumstances beyond the inherent seriousness of the crime itself'"), citing King v. N.Y. State Div. of Parole, 598 N.Y.S.2d 245, 251 (1st Dep't 1993), with Cappiello v. N.Y. State Bd. of Parole, 800 N.Y.S.2d 343 (Table), 2004 WL 3112629, at *7 (Sup. Ct. Nov. 30, 2004) (granting inmate's Article 78 petition for reconsideration of parole denial on basis that the Board failed to take into account factors other than petitioner's "threat to public safety"), and Wallman v. Travis, 794 N.Y.S.2d 381, 388 (1st Dep't 2005) ("[A]s the sole . . . basis for the Board's denial was the seriousness of the offense, [the parole denial] was irrational bordering on impropriety.").

[6] Although federal courts may exercise supplemental jurisdiction over pendent state law claims, see 28 U.S.C. § 1367(a), such an exercise is inappropriate here, as plaintiff's federal claims have been dismissed.  Id. at (c) ("[D]istrict courts may decline to exercise supplemental jurisdiction [if] . . . the district court has dismissed all claims over which it has original jurisdiction.").  See Schaefer v. Town of Victor, 457 F.3d 188, 210 (2d Cir. 2006).

Parole Officers, 999 F.2d 647, 653 (2d Cir. 1993) ("[E]rroneous determinations [of the Parole Board] may be reviewed promptly in a proceeding under NYCPLR Article 78 . . . ."). Indeed, plaintiff is clearly aware of the New York procedure, as he has filed an Article 78 petition challenging his 2005 parole denial. (Defs. Ex. F.)

The argument that a disregard of governing state law inherently renders a parole decision arbitrary or procedurally flawed proves too much. If such an argument were accepted, every state law requirement would ipso facto be incorporated into federal constitutional law. Accordingly, plaintiff's due process claim is dismissed.

> C.      Equal Protection

> > 1.      "Violent Felons" As Protected Class Claim

Next, plaintiff claims that the state's disparate treatment of violent and non-violent offenders violates his right to equal protection. Defendants argue that plaintiff has failed to state a claim for an equal protection violation because he has not alleged "a purposeful discrimination directed at an identifiable or suspect class." (Defs. Mem. 19, citing Giano v. Senkowski, 54 F.3d 1050, 1057 (2d Cir. 1995).) The Court agrees.

Under the Equal Protection Clause, "all persons similarly situated should be treated alike." City of Cleburne, Texas v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Prisoners are not a suspect class, Lee v. Governor of State of N.Y., 87 F.3d 55, 60 (2d Cir. 1996), and plaintiff does not claim that a fundamental personal right is implicated in the denial of parole. Nor are violent prisoners a suspect class. A history of violent crime is the very opposite of a morally irrelevant, immutable trait: it reflects a voluntary choice by the offender to commit a dangerous and harmful criminal act when he could have complied with the law. Thus, "disparate

15

treatment by the state in granting parole to violent and nonviolent prisoners is presumed constitutional and need only be rationally related to a legitimate state interest." Salahuddin, 2005 WL 2122594, at *7, citing Benjamin v. Jacobson, 172 F.3d 144, 165 (2d Cir. 1999). See Harris v. Travis, No. 97 Civ. 3275, 1998 WL 812617, at *3 (E.D.N.Y. Mar. 24, 1998). "Here, the state's rational basis for a distinction in parole determinations between violent and nonviolent offenders is obvious: preventing the early release of potentially violent inmates." Salahuddin, 2005 WL 2122594, at *7. Thus, plaintiff cannot state an equal protection violation on this basis.

        2.     "Class Of One" Claim

Plaintiff also alleges that the Parole Board specifically selected him for discriminatory treatment by denying him parole. Plaintiff asserts that the Board discriminated against him because of his political and ideological beliefs, and because he is a "young rich . . . guy" who has caused New York State authorities "extreme embarrassment." (Am. Compl. ¶ 44.) Thus, Mathie claims he has been arbitrarily and intentionally discriminated against as a "class of one." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). This claim, in tension with plaintiff's first claim that the Parole Board applied "an inflexible and impermissible policy of denying parole to inmates based on their offense of conviction," asserts that the Board "in fact has granted parole to offenders convicted of first-degree manslaughter," but arbitrarily rejected Mathie's application due to "irrational considerations." Brown, 2003 WL 941940, at *2. However, unlike plaintiff's other equal protection claim, plaintiff's claim that he has been arbitrarily discriminated against as a "class of one" cannot be dismissed on a 12(b)(6) motion.

Although the standard for *establishing* a "class of one" claim is "extremely high,'"
Celotto v. Brady, No. 3-06 Civ. 650, 2007 WL 1851170, at *3 (D. Conn. June 25, 2007), citing
Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005), the standard for *stating* a "class of one"
claim is not onerous.  To state a valid equal protection "class of one" claim, a plaintiff must
allege (1) that he has been intentionally treated differently from others similarly situated, and (2)
that there is no rational basis for the difference in treatment.  DeMuria v. Hawkes, 328 F.3d 704,
706 (2d Cir. 2003).  "General" and "relatively bare" allegations that plaintiff was subjected to a
"different standard" than that "typically afforded" to a similarly situated person are "sufficient to
meet the minimum level established . . . for 'class of one' claims at the pleading stage."
McCormick v. Town of Clifton Park, No. 05 Civ. 694, 2006 WL 1454819, at *5 (N.D.N.Y. May
23, 2006), citing Demuria, 328 F.3d at 707.

Here, plaintiff alleges that the Board discriminated against him because of the "extreme
embarrassment" he has caused to state authorities as a result of a civil suit he brought against a
Suffolk County prison warden and his post-conviction financial activities.  (Am. Compl. ¶ 44; id.
¶ 27, citing Mathie v. Fries, 935 F. Supp. 1284 (E.D.N.Y. 1996).)  After his criminal conviction,
Mathie sued the director of security for the Suffolk County Correctional Facility, the pre-trial
detention center in which he had been placed awaiting his criminal trial, for sexual assault, and
was awarded $250,000 in compensatory damages and $500,000 in punitive damages by the
court.  Mathie, 935 F. Supp. at 1307.[7]  Mathie invested the proceeds from his award, which,
according to Mathie, has made him the New York State correctional facilities' "Resident

---

[7] The judgment was upheld on appeal, but the punitive damages award was reduced to
$200,000.  Mathie v. Fries, 121 F.3d 808, 818 (2d Cir. 1997).

Millionaire." (Am. Compl. ¶ 42.) Both Mathie's sexual assault trial and his financial activity have garnered some press coverage (id. ¶¶ 42-44; Pl. Ex. BbB, at 809-11), which he claims "ha[s] caused extreme embarrassment to very influential and powerful" politicians in New York (id. ¶ 44.) He also alleges that this "embarrassment . . . is not unknown to every Parole Board Commissioner." (Id.)

Thus, plaintiff claims, not implausibly, that events surrounding his incarceration have raised some eyebrows within the New York State prison system and legislature. For example, plaintiff alleges that his sexual assault trial was opposed by members of the Pataki administration, that it resulted in the "1996 Prison Rape Act," and that a "powerful" New York Senator cited plaintiff's financial success from the sexual assault trial as the motivation for an "Expanded Son of Sam Law" that would prevent a convicted felon from "profiting from his crime." (Am. Compl. ¶¶ 38, 43.) Whether or not the state has actually taken those actions, and whether or not plaintiff is exaggerating his notoriety or influence, are irrelevant considerations in the motion to dismiss context. On a motion to dismiss, the factual allegations in plaintiff's complaint must be taken as true. Twombly, 127 S. Ct. at 1965. If it is true that plaintiff has caused "extreme embarrassment" to members of the New York State prison system and legislature (Am. Compl. ¶ 44), then it is plausible – even if just "barely" so, Demuria, 328 F.3d at 707 – that Mathie was denied parole on that irrational basis, and defendants' motion to dismiss must be denied. See Iqbal, 490 F.3d at 157-58. (finding that Twombly does not require a "universal standard of heightened fact pleading," but only "some factual allegations" to "amplif[y]" the "plausib[ility]" of a claim).

18

Nevertheless, the Court's inquiry into plaintiff's "class of one" claim does not end there. Although this issue comes before the Court on a motion to dismiss, both parties have also presented to the Court additional materials outside the pleadings relevant to the merits of plaintiff's claim.  "[W]hen matters outside the pleadings are presented in response to a 12(b)(6) motion," the district court is authorized to "convert the motion to one for summary judgment under Fed. R. Civ. P. 56." Friedl v. City of N.Y., 210 F.3d 79, 83 (2d Cir. 2000).  Conversion is permitted as long as the Court "afford[s] all parties the opportunity to present supporting material." Id., citing Fonte v. Bd. of Managers of Cont'l Towers Condo., 848 F.2d 24, 25 (2d Cir. 1988).  See Amaker v. Weiner, 179 F.3d 48, 50 (2d Cir. 1999) (finding that the "conversion requirement" is "strictly enforce[d]" where there is a "legitimate possibility" that the district court relied on material outside the complaint in ruling on the motion).

While "a district court ordinarily must give notice to the parties before converting a motion to dismiss pursuant to Rule 12(b)(6) into one for summary judgment and considering matters outside the pleading," the central inquiry in a conversion determination is whether the non-movant "should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of reasonable opportunity to meet facts outside the pleadings." Gurary v. Winehouse, 190 F.3d 37, 43 (2d Cir. 1999) (citations and internal quotation marks omitted).  "Notice [of conversion] is particularly important when a party is proceeding pro se and may be unaware of the consequences of his failure to offer evidence bearing on triable issues." Beacon Enters., Inc. v. Menzies, 715 F.2d 757, 767 (2d Cir. 1983).  However, "a District Court need not advise a pro se litigant as to the nature of summary judgment where an opposing party has already provided the litigant with the

requisite notice, or where the record otherwise makes clear that the litigant understood the nature and consequences of summary judgment." Vital v. Interfaith Med. Ctr., 168 F.3d 615, 621 (2d Cir. 1999) (citations omitted).

Though mindful of plaintiff's pro se status, the Court nevertheless finds that conversion is appropriate here. Defendants provided plaintiff with notice pursuant to Local Rule 12.1 that the Court may treat the motion as one for summary judgment under Fed. R. Civ. P. 56. In addition, it is clear from the record that plaintiff "understood the nature" of summary judgment. Id. Plaintiff submitted over 1300 pages of exhibits with his response, ranging from the minutes of his parole hearings to various statistical reports regarding New York's allegedly unconstitutional parole policy. In addition, defendants submitted several exhibits in support of their motion. Thus, both parties have been "afford[ed] . . . the opportunity to present supporting material," Friedl, 210 F.3d at 83, and therefore defendants' motion to dismiss may be properly treated as one for summary judgment.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court's responsibility is to determine if there is a genuine issue to be tried, and not to resolve disputed issues of fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The Court must draw all reasonable inferences and resolve all ambiguities in the nonmoving party's favor, and construe the facts in the light most favorable to the nonmoving party. Id. at 254-55. However, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50

20

(citations omitted).

The party seeking summary judgment bears the burden of showing that no genuine factual dispute exists.  See Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995).  Once the moving party has made a showing that there are no genuine issues of material fact, the burden shifts to the nonmoving party to raise triable issues of fact.  Anderson, 477 U.S. at 250. A genuine issue for trial exists if, based on the record as a whole, a reasonable jury could find in favor of the nonmoving party.  Id. at 248.

Construing the facts in a light most favorable to plaintiff, the record is insufficient to permit a reasonable fact finder to find a denial of equal protection as a "class of one."  The "class of one" test requires a "sufficient showing that the [plaintiff] was similarly situated to other persons and was singled out for differential treatment from them in a manner that subjected him to 'irrational and wholly arbitrary acts' and 'intentional disparate treatment.'"  Manley, 265 F. Supp. 2d at 365, citing Brown, 2003 WL 941940, at *2.  See, e.g., Neilson, 409 F.3d at 104 (requiring "the level of similarity" in a "class of one" claim to be "extremely high").  Plaintiff has not established that he was treated differently from other similarly situated inmates.  As indicated by other courts in this Circuit that have considered identical claims, Mathie is not the only first-degree manslaughter offender to be denied parole, Brown, 2003 WL 941940, at *2; see Defino, 2003 WL 40502, at *4; Manley, 265 F. Supp. 2d at 366 (listing cases), and Mathie himself argues that such denial is the rule rather than the exception.  See Brown, 2003 WL 941940, at *2.  See Seltzer v. Thomas, No. 03 Civ. 00931, 2003 WL 21744084, at *4 (S.D.N.Y. July 29, 2003).  Indeed, "[t]he number and variety of factors bearing on the seriousness of the underlying offense and the likelihood that an offender will be a danger to the community make it

impossible to conclude, on the basis of the sketchy data presented, that plaintiff has been singled

out from among all homicide offenders for disparate treatment."  Brown, 2003 WL 941940, at

*2.  There is thus no basis to conclude that he was invidiously treated, "nor, given the numerous

factors that can appropriately be considered, is it likely that he could."  Id.  See Morel, 2003 WL

21488017, at *5 (characterizing plaintiff's "class of one" claim as "difficult if not impossible to

sustain") (citation and internal quotation marks omitted).

Furthermore, even assuming arguendo that plaintiff could show that he was treated

differently from similarly situated inmates, there is no evidence in the record that the defendants

were motivated by an invidious motive in denying him parole.  Plaintiff claims that he was

denied parole, not on the basis of any relevant criteria such as his institutional record or severity

of his crime, but because of the "embarrassment" caused to defendants by plaintiff's sexual

assault trial and financial activity.  (Am. Compl. ¶ 44.)  However, plaintiff's sexual assault trial

was never mentioned during the parole hearings, and while plaintiff was questioned about his

financial activity during the 2003 parole hearing, the questions were only asked in response to

plaintiff's volunteered statement that he had been framed for drug use by individuals who did not

approve of his financial activity.  (Defs. Ex. C, at 7.)  Defendants did not affirmatively elicit

information about his financial activity, except to the extent that plaintiff himself affirmatively

chose to discuss that topic.  Indeed, defendants did not press the issue at all, and quickly moved

onto other, relevant considerations.  (See id. 7-8 ("I don't know if you want to speak about [your

financial activity].  Now, you would live with your . . . attorney [after release]?").)

In addition, the minutes of plaintiff's 2003 and 2005 parole hearings show that the

Commissioners at both hearings deliberately and carefully considered plaintiff's institutional

record and other relevant factors, such as his post-incarceration plans, in making their parole

determinations.  (See Defs. Ex. C, at 5-6, 8-10, 17-18; Defs. Ex. D, at 7-14.)  Specifically, the

Commissioners considered plaintiff's disciplinary record, parole release proposal, prior drug use,

and plans to attend college, as well as the severity of plaintiff's crime.  Plaintiff's allegation that

defendants were motivated by an invidious intent is supported only by plaintiff's own

speculation and conjecture.  (See Pl. Mem. 47 ("The plaintiff will never have a fair, reasoned and

individualized parole release hearing in this State.").)  However, neither "mere allegations,"

Davis v. State of N.Y., 316 F.3d 93, 100 (2d Cir. 2002), nor "speculation and conjecture" are

sufficient to preclude the granting of summary judgment.  Guilbert v. Gardner, 480 F.3d 140,

145 (2d Cir. 2007) (citation and internal quotation marks omitted).  Thus, plaintiff has not made

the "required . . . show[ing]" of "*intentional* disparate treatment," and his claim fails.  Giordano

v. City of N.Y., 274 F.3d 740, 751 (2d Cir. 2001) (emphasis in original).[8]

---

[8] Plaintiff also claims that defendants discriminated against him because he is a "white
guy," and because of his "political" and "ideological" beliefs.  (Am. Compl. ¶¶ 22, 44.)  Plaintiff
seems to regard both of these claims as part of his "class of one" argument, but they could be
interpreted as legally distinct claims.  To the extent that the Court must consider pro se
complaints to raise any arguments they can plausibly be read to state, see Weixel v. Bd. of Educ.
of City of N.Y., 287 F.3d 138, 145-46 (2d Cir. 2002), the Court assumes without deciding that
plaintiff has stated a race discrimination and First Amendment claim as well as a "class of one"
claim.  However, insofar as plaintiff has stated a race discrimination or First Amendment claim,
those claims also fail on summary judgment.
    The only evidence plaintiff sets forth that defendants were motivated by a racial animus
is his claim that defendants referred to him as a "young rich white guy" during his 2005 parole
hearing.  (Am. Compl. ¶ 44.)  However, the transcript of the 2005 parole hearing clearly belies
plaintiff's contention.  The Commissioners never referred to plaintiff's race during the hearing.
The question referred to by plaintiff does not ask whether plaintiff is a "white guy," but whether
the victim of his crime was a "rich, young guy."  (Defs. Ex. D, at 5.)  There was no mention of
race during the hearing.
    Although plaintiff argues that "[t]he accuracy of this transcript is in question," (Pl. Mem.
6), plaintiff actually *answered* defendants' question of whether the victim was a "rich, young
guy."  (Defs. Ex. D, at 6 ("No.  I was 21 and I believe he was the age I am today, 38.").)  Thus, it

D.     Ex Post Facto

Next, plaintiff argues that New York's alleged policy of denying parole to all violent

offenders violates the Ex Post Facto Clause.  Specifically, Mathie argues that application of the

alleged changes in the state's parole standards from the prior policy of full consideration of the

statutory factors constitutes an ex post facto extension of his sentence.  Defendants argue that,

even if the New York State parole standards have changed since plaintiff's incarceration,

changes in parole standards cannot violate the Ex Post Facto Clause.  The Court agrees.[9]

The Ex Post Facto Clause prohibits "legislative action that retroactively 'punishes as a

_____

was obvious, even to plaintiff, that defendants' question was in reference to the victim, and not
to plaintiff, and that defendants had not asked about his, or anybody else's, race.  Therefore, a
reasonable jury could not find that defendants were motivated by a racial animus in denying
plaintiff parole.

      Similarly, a reasonable jury could not find that defendants violated plaintiff's First
Amendment rights.  Plaintiff presents no cognizable evidence of political discrimination, any
more than he presents evidence in his "class of one" claim that the Board discriminated against
him for reasons unique to himself.  Indeed, the only support he has set forth for his First
Amendment claim is his own conclusory statement that the Board denied him parole because he
is a Democrat and the Board is composed of former Governor Pataki's "Republican comrades."
(Am. Compl. ¶ 44.)  However, "mere speculation and conjecture is insufficient to preclude the
granting" of summary judgment.  Guilbert, 480 F.3d at 145.  Thus, plaintiff's First Amendment
claim also fails on summary judgment.

      [9] Defendants also argue that the Court should reject plaintiff's ex post facto claim
because he first raised it in his opposition to the motion to dismiss, and not in his complaint.
(Defs. Reply 7, citing Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998).)
However, pro se plaintiffs must be afforded "special solicitude" in complying with procedural
rules.  Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).  Thus, "where a pro se plaintiff
has submitted other papers to the Court, such as legal memoranda, the Court may consider
statements in such papers to supplement or clarify the plaintiff's pleaded allegations."  Milano v.
Barnhart, No. 05 Civ. 6527, 2007 WL 2042954, at *2 (S.D.N.Y. July 12, 2007).  The Court will
therefore "overlook[] this technical default" and consider the merits of plaintiff's ex post facto
claim.  Dove v. City of N.Y., No. 03-CV-5052, 2007 WL 805786, at *1 n.3 (E.D.N.Y. Mar. 15,
2007).  See, e.g., Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001) ("A district court
has broad discretion to determine whether to overlook a party's failure to comply with local
court rules.")

crime an act previously committed, which was innocent when done,' 'makes more burdensome the crime, after its commission,' or 'deprives one charged with crime of any defense available according to law at the time when the act was committed." Doe v. Pataki, 120 F.3d 1263, 1272 (2d Cir. 1997), quoting Beazell v. Ohio, 269 U.S. 167, 169-70 (1925).  "[T]he focus of the ex post facto inquiry is not on whether a legislative change produces some ambiguous sort of 'disadvantage,' . . . but on whether any such change . . . increases the penalty by which a crime is punishable." Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 506 n. 3 (1995).  However, the Ex Post Facto Clause does not apply to standards that "are promulgated simply to guide the parole board in the exercise of its discretion." Barna, 239 F.3d at 171.  Such standards are "merely procedural and do[] not increase a prisoner's punishment, . . . even when applied retrospectively." Id.  Thus, any changes to parole guidelines do not constitute "laws within the meaning of the" Ex Post Facto Clause. Id.; see Salahuddin, 2005 WL 2122594, at *8; Gilmore v. Stone, No. 01-CV-00880, 2003 WL 1923734, at *3 (N.D.N.Y. Apr. 23, 2003).

Mathie argues that New York's alleged new policy of denying parole to all violent felons has transformed the Parole Board into a "re-sentencing" body, thereby extending his incarceration beyond its original term.  (Pl. Mem. 43.)  Plaintiff misunderstands his sentence. Plaintiff was sentenced to a term of incarceration of eight to twenty-four years for the crime of manslaughter in the first degree, and a consecutive term of two to six years for conspiracy in the third degree.  (Defs. Ex. D, at 2.)  As a result, his maximum sentence is thirty years.  He was convicted in 1989; thus, as of 2005, he had only served sixteen years of his sentence.  The parole decision determines what portion of that sentence will be served in a penal institution, and what part on conditional release under supervision.  "[A]lthough a denial of parole may appear to

make [Mathie]'s time of incarceration longer, [he] is still serving the sentence that the court imposed upon him when he was convicted, consistent with the statutes in effect at the time of the crime."  Bottom, 2006 WL 2265408, at *7.  Therefore, plaintiff has not stated an ex post facto claim.

E.      Conspiracy

Finally, plaintiff claims that, by "selectively discriminat[ing] against" him, defendants have engaged in a conspiracy to violate his civil rights.  (Am. Compl. ¶ 72.)  Defendants argue that plaintiff has not adequately pled a conspiracy claim pursuant to § 1983.  They are correct.

"In order to survive a motion to dismiss on his § 1983 conspiracy claim, [a plaintiff] must allege (1) an agreement [between two or more state actors] . . . ; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Ciambriello v. County of Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002), citing Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999).  See id. at 325 ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed."), quoting Dwares v. City of N.Y., 985 F.2d 94, 100 (2d Cir. 1993).  See, e.g., Hernandez v. Goord, 312 F. Supp. 2d 537, 546 n.5 (S.D.N.Y. 2004) (characterizing the pleading standard for § 1983 conspiracy claims as "elevated").  A § 1983 action for conspiracy "will stand only insofar as the plaintiff can prove the sine qua non of a § 1983 action: the violation of a federal right."  Singer v. Fulton County Sheriff, 63 F.3d 110, 119 (2d Cir. 1995), citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970).

26

In this case, plaintiff has failed to adequately allege the existence of a conspiracy to violate his civil rights.  Plaintiff alleges an agreement between state actors (members of the Pataki administration) to commit an overt act (implementation of a blanket policy of denial of parole to all violent felons, which resulted in the denial of plaintiff's parole).  However, to survive a motion to dismiss, the actions that plaintiff alleges that the state actors agreed to commit must be acts that would inflict "an unconstitutional injury" on plaintiff.  Ciambriello, 292 F.3d at 324.  As set forth above, the actions alleged by plaintiff do not constitute an illegal conspiracy, either because he has no cognizable federal claim that those actions would violate the constitution or because the record lacks the evidence to support those claims.  Thus, even assuming that defendants agreed to implement a blanket policy to deny parole to all violent felons, because such a policy would not be unconstitutional, plaintiff cannot state the "sine qua non" of a § 1983 conspiracy claim, Singer, 63 F.3d at 119, and his claim must be dismissed.

## CONCLUSION

For the foregoing reasons, defendants' motion is granted and plaintiff's complaint is dismissed.

SO ORDERED.

Dated: New York, New York
      August 16, 2007

GERARD E. LYNCH
United States District Judge